MOSES-final 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-91-551-CV





JAMES MOSES AND CARMEN MOSES,



 APPELLANTS


vs.





FRANCES SANCHEZ AND RAY SANCHEZ,



 APPELLEES




 




 FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY



NO. 88-847-F3, HONORABLE TIMOTHY G. MARESH, JUDGE PRESIDING



 




 Maternal grandparents appeal the trial court's judgment rendered after a jury trial
granting the father of the child sole managing conservatorship and granting the maternal
grandparents and the paternal grandmother possessory conservatorship. We will affirm.


BACKGROUND



 On April 2, 1987, Mary Ann Moses gave birth to Crystal, the subject of this
conservatorship dispute. Mary Ann and the child's biological father, Ray Sanchez, never married. 
An agreed Decree of Legitimation rendered December 6, 1988, established that Ray Sanchez was
the father of the child, named Mary Ann sole managing conservator, and named Ray Sanchez
possessory conservator. On December 24, l988, Mary Ann Moses died of leukemia. On
February 14, 1989, an order was issued with the consent of all parties appointing appellants James
and Carmen Moses, the maternal grandparents, and appellee Frances Sanchez, the paternal
grandmother, joint managing conservators of the child. Appellee Ray Sanchez was named
possessory conservator. The Moseses were granted primary physical possession. 

 In August 1989, Ms. Moses observed that the child's genital area was red and
irritated upon her return from a visit with Ray Sanchez and his family. After treating the irritation
for four days with no improvement, Ms. Moses took the child to a doctor. In addition to the
irritation, the doctor also visually observed that the child's hymen was thin and sagging. The
doctor found that these symptoms were consistent with sexual abuse. The child was additionally
diagnosed with a bladder infection. The doctor notified the Texas Department of Human Services
("DHS"). DHS began an investigation and, soon afterwards, the court appointed an attorney ad
litem to represent the child.

 Both the Moseses and the Sanchezes denied any misconduct. DHS removed the
child from the Moseses' home and placed her in foster care pending a full investigation of both
families. The investigation was inconclusive as to whether any sexual abuse in fact occurred and
as to the identity of the perpetrator of any alleged abuse. The father, Ms. Sanchez, and the
Moseses were eliminated from consideration as possible perpetrators. The child was returned to
the Moseses' home.

 In September 1989, the Moseses filed a motion to modify the earlier agreed order,
asking for sole managing conservatorship of the child. In August 1990, the father and the paternal
grandmother filed a cross-motion seeking sole managing conservatorship in favor of the father or,
alternatively, joint managing conservatorship in favor of the father and the paternal grandmother. 
The jury awarded sole managing conservatorship to the father and possessory conservatorship to
the Moseses and the paternal grandmother.




DISCUSSION



Modification Instruction


 In point of error one, appellants complain that the trial court incorrectly instructed
the jury in accordance with section 14.081 rather than section 14.08 of the Family Code. We
disagree. See Tex. Fam. Code Ann. §§ 14.08, .081 (West 1986 & Supp. 1993). (1)

 Section 14.081 sets forth the "standards to modify the joint conservatorship." (2) 
§ 14.081(a). Further, section 14.081(d) allows the court to replace the joint managing
conservatorship with a sole managing conservatorship on motion of either joint managing
conservator or on its own motion, provided the standards are satisfied. § 14.081(d). The Family
Code does not limit whom the court may appoint as sole managing conservator.

 Appellants argue that section 14.081 applies only to modification of an order as
between the joint managing conservators and that, since the father was not one of the joint
conservators, he must meet the standards of section 14.08, which govern the modification of a

sole managing conservatorship. (3) In this case, however, the Moseses as joint managing
conservators, filed the motion to modify the joint conservatorship, bringing the case under section
14.081. Further, the father and his mother, a joint managing conservator under the agreed order,
filed a cross-motion to modify the order. A party's status as a joint managing conservator when
the motion is filed determines whether section 14.081 applies. The fact that none of the joint
managing conservators were ultimately named the sole managing conservator has no bearing on
the application of section 14.081. Appellants' first point of error is overruled.


Parental Presumption Instruction



 In their seventh point of error, appellants complain that the trial court erroneously
included an instruction to apply a presumption favoring parents in conservatorship disputes in the
general instructions to the jury. Section 14.01 provides, in pertinent part: "(b) A parent shall be
appointed sole managing conservator . . . of the child unless: (1) the court finds that appointment
of the parent or parents would not be in the best interest of the child because the appointment
would significantly impair the child's physical health or emotional development." Tex. Fam.
Code Ann. § 14.01(b)(1) (West Supp. 1993). Appellants do not dispute the strength of the
presumption; instead, they dispute its application in this case. Because the February 14, 1989
order did not name the father as a managing conservator, appellants argue that the parental
presumption no longer applies. The Texas Supreme Court has recently stated, "The legislature,
in enacting section 14.01(b), codified that presumption by defining the procedure for appointment
of a non-parent as managing conservator." Lewelling v. Lewelling, 796 S.W.2d 164, 166 (Tex.
1990) Unfortunately, the Family Code does not address whether the presumption survives an
agreed order giving joint managing conservatorship to non-parents.

 The father cites Yancey v. Koonce, 645 S.W.2d 861 (Tex. App.--El Paso 1983, writ
ref'd n.r.e.), as authority for allowing him to receive the benefit of the parental presumption. In
Yancey, the mother and father of a child divorced and the mother was appointed managing
conservator. The mother then remarried, moved, and left the child with the maternal
grandparents. The maternal grandparents initiated proceedings in an effort to gain managing
conservatorship of the child. The father and the paternal grandparents contested this proceeding. 
Despite an instruction on the parental presumption, the father lost and the court awarded the
maternal grandparents managing conservatorship. On appeal, the father argued that the jury
instruction on the parental presumption, which was identical to the jury instruction in this case,
incorrectly allocated the burden of proof equally between the parties, and the court of appeals
agreed. Id. at 863. Yancey is similar to the present case because the presumption was applied in
a conservatorship contest despite the existence of an earlier order which appointed someone other
than the father managing conservator. Because the application of the presumption was not directly
challenged and because the earlier order did not involve non-parents, however, Yancey is not
controlling in this cause.

 In two cases decided before the 1987 amendment of section 14.01(b), the courts
held that, after a parent has initially been denied custody, the parental presumption may not be
asserted in a subsequent modification proceeding. Hogge v. Kimbrow, 631 S.W.2d 603, 604-05
(Tex. App.--Beaumont 1982, no writ); Allen v. Salinas, 483 S.W.2d 289, 292 (Tex. Civ. App.--El
Paso 1972, no writ). These cases rely on the doctrine of res judicata and the strong policy
favoring stability in a child's residency. Hogge, 631 S.W.2d at 605; Allen, 483 S.W.2d at 292. 
The 1987 amendment, however, strengthened and clarified the parental presumption. See
Lewelling, 796 S.W.2d at 166-67. Although we acknowledge the strength of this presumption in
an initial conservatorship determination, we conclude that, under the reasoning of Hogge and
Allen, its application is barred in subsequent modification proceedings. Accordingly, we conclude
the trial court erred in instructing the jury on the parental presumption.

 However, this determination does not end our analysis. For an erroneous jury
instruction to constitute reversible error, it must amount to such a denial of the rights of the
appellant that it was reasonably calculated to and probably did cause the rendition of an improper
judgment. Tex. R. App. P. 81(b)(1); Island Recreational Dev. Corp. v. Republic of Tex. Sav.
Ass'n, 710 S.W.2d 551, 555 (Tex. 1986). In making this determination, we must consider the
pleadings of the parties, the evidence presented at trial, and the charge in its entirety. Island
Recreational Dev. Corp., 710 S.W.2d at 555. If the verdict would have been the same without
the instruction, the error is harmless. See Automobile Ins. Co. v. Davila, 805 S.W.2d 897, 904-05 (Tex. App.--Corpus Christi 1991, writ denied); Texas Constr. Serv. Co. of Austin, Inc. v.
Allen, 635 S.W.2d 810, 814-15 (Tex. App.--Corpus Christi 1982, writ ref'd n.r.e.). As we have
stated above, the jury was properly charged on the section 14.081 standards that must be met to
modify the conservatorship. The record evidence supports the necessary findings under section
14.081 that the circumstances of the parties had "materially and substantially changed" since the
prior order such that the order had become "unworkable and inappropriate" and that a change in
conservatorship would result in a "positive improvement" and be "in the best interest of" the
child. We conclude that any error in including the parental presumption in the instructions was
not calculated to and did not cause an improper verdict and, thus, is not reversible error. See
Boyer v. Scruggs, 806 S.W.2d 941, 947 (Tex. App.--Corpus Christi 1991, no writ). We overrule
appellant's seventh point of error.


Implied Finding of Serious and Immediate Harm 



 In their second point of error, appellants argue that the agreed order granting non-parents managing conservatorship implies a finding that the conditions with the parent, at the time
of that order, presented a serious and immediate question regarding the welfare of the child. 
Appellants assert that the father must refute this implied finding to obtain a modification.

 They argue that this finding must be implied because (1) the grandparents have
standing in this suit; and (2) for non-parents to have standing, the non-parents must show that
conditions with the parent presented a serious and immediate harm to the child. See
§ 11.03(b)(1); Von Behren v. Von Behren, 800 S.W.2d 919, 921 (Tex. App.--San Antonio 1990,
writ denied) (grandparent has standing to initiate a suit seeking managing conservatorship only
in extreme circumstances). We conclude that this argument is not applicable to the immediate
facts.

 The original suit affecting the child was initiated by the mother of the child before
her death, who sought and received managing conservatorship of the child. The Moseses were
intervenors in this action when they filed the motion to modify the original order affecting the
child upon the death of their daughter. Their intervention resulted in the agreed order of February
14, 1989. Standing to intervene requires only a justiciable interest, which grandparents possess,
not a finding that the parent presented a serious and immediate threat to the welfare of the child. 
McCord v. Watts, 777 S.W.2d 809, 812 (Tex. App.--Austin 1989, no writ); Young v. Young, 693
S.W.2d 696, 698-99 (Tex. App.--Houston [14th Dist.] 1985, writ dism'd).

 Additionally, as discussed above, we believe that section 14.081 sets out the criteria
for modification in the immediate case. Given this clear statement in the Family Code, we decline
to add an additional hurdle based on an implication from the standing requirement for
grandparents. Appellants' second point of error is overruled.


Exclusion and Admission of Evidence



 Appellants contend, in their third point of error, that the trial court should have
allowed evidence of the father's conduct before the February 14th order. The court granted a
motion in limine which prohibited the parties from referring to any conduct of any party before
February 14, 1989. The parties agree that evidence of misconduct of any party that occurred
before the order sought to be modified is inadmissible except to corroborate evidence of similar
misconduct after the order. Wilson v. Elliott, 73 S.W. 946, 947 (Tex. 1903); In re B.S.L., 579
S.W.2d 527, 528 (Tex. Civ. App.--San Antonio 1979, writ ref'd n.r.e.); Green v. White, 203
S.W.2d 960, 962 (Tex. Civ. App.--El Paso 1947, no writ).

 Appellants claim that a police record or docket notation containing a post-order
complaint against Ray Sanchez for assaultive behavior towards two women was incorrectly
excluded and, if admitted, would have been sufficient evidence of his violent nature to allow
admission of corroborating evidence of conduct before February 14, 1989. 

 The trial court first addressed the admissibility of the police record in a conference
before jury voir dire. To properly preserve a complaint for appellate review, a party must have
presented to the trial court a timely request, objection, or motion, stating the specific grounds for
the ruling desired and have obtained a ruling upon the party's request, objection, or motion. Tex.
R. App. P. 52(a). Error in the exclusion of evidence cannot be preserved on the basis of
objection to the motion in limine alone. Brown v. American Transfer & Storage Co., 601 S.W.2d
931, 936 (Tex.), cert. denied, 449 U.S. 1015 (1980); Rodarte v. Cox, 828 S.W.2d 65, 77 (Tex.
App.--Tyler 1991, no writ). The record does not indicate nor do appellants point out where the
police record was actually offered as evidence and excluded. Appellants made the offer of proof
premised upon a ruling of inadmissibility; however, we do not find such a ruling in the record. 
Appellants therefore have not properly preserved their complaint.

 Appellants also contend that a court report, prepared by the caseworker and
submitted by DHS, opened the door for admission of evidence of the father's conduct that pre-dated the order of February 14, 1989. The court report mentions previous referrals to DHS
regarding the child. The referrals were documented as unfounded. This information is not
sufficiently similar to alleged misconduct of the father to warrant "opening the door." See Top
Value Enters. v. Carlson Mktg. Group, Inc., 703 S.W.2d 806, 811 (Tex. App.--El Paso 1986, writ
ref'd n.r.e.). We overrule appellants' third point of error.

 In their fourth point of error, appellants contend that evidence of the father's
conduct before February 14, 1989, was improperly excluded because appellees' objection that the
evidence violated the court's ruling on the motion in limine was insufficient. We disagree. The
extensive discussion by the litigants in this case regarding the substance of the motion in limine
clearly establishes the context of the objection. The evidence of Ray Sanchez conduct before the
February 14, 1989 order was not admissible except to corroborate evidence of subsequent
conduct. Wilson, 73 S.W. at 947; In re B.S.L., 579 S.W.2d at 528; Green v. White, 203 S.W.2d
at 962. If the grounds of the objection are clear from its context, the objection was in proper
form. Tex. R. Civ. Evid. 103(a)(1). Our examination of the record shows that the exclusion of
the evidence on these grounds was not error because the grounds of the objection were clear from
the context. Appellants' fourth point of error is overruled.

 In their sixth point of error, appellants also complain that the testimony of a
handwriting expert was improperly excluded. Appellants called this witness because the witness
(1) was a handwriting expert who would testify that Mary Ann Moses' signature on the statement
of paternity was unauthentic, (2) was a Court Appointed Special Advocate ("CASA") volunteer,
and (3) knew a neighbor of the Moseses. Appellants did not make an offer of proof on any expert
testimony of the witness as a CASA volunteer or as a fact witness. Therefore, any error in
excluding this testimony is waived. Tex. R. Civ. Evid. 103(a)(2).

 Appellants did make an offer of proof on the expert opinion testimony that Mary
Ann Moses' signature was forged on the agreed Decree of Legitimation. The asserted relevance
of this testimony was to show Ray Sanchez' lack of credibility and "what he would be willing to
do to get his way." The trial court sustained objections to this testimony, stating that the witness
could not form an opinion as to Ray Sanchez and that the testimony was immaterial. Because this
testimony related to an alleged incident occurring before the order sought to be modified, the
exclusion of this evidence was proper. Wilson, 73 S.W. at 947; In re B.S.L., 579 S.W.2d at 528;
Green v. White, 203 S.W.2d at 962. Appellants' sixth point of error is overruled.

 In their fifth point of error, appellants complain that a chart prepared by the
attorney ad litem during opening argument was erroneously admitted. We agree. However, we
believe the error to be harmless in this case. The chart was admitted into evidence for the purpose
of reflecting questions and issues the attorney ad litem asked the jury to consider. The chart was
not based on evidence. The jury may take the charge and instructions and any written evidence,
except depositions, into the jury room during deliberations. Tex. R. Civ. P. 281. Because the chart contained the attorney ad litem's personal comment on the issues and did not
summarize evidence, admission was erroneous. The admission was not reversible error, however. 
The jury was instructed on what qualified as evidence on several occasions and the court presented
the charge which provided the legal rules to be followed in reaching a verdict. Appellants have
failed to show that the admission of the chart amounted to such a denial of rights as was
reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex.
R. App. P. 81(b)(1). Appellants' fifth point of error is overruled.


Affidavit of Inability to Pay Costs



 Appellants contend in their eighth and final point of error that the trial court erred
in sustaining the contest to the Moseses' affidavit of inability to pay costs, in setting the bond at
more than any party had requested, and in basing its decision on impermissible grounds. 
Mandamus in the court of appeals is the proper remedy upon a trial judge's sustaining a contest
to an affidavit of inability to pay costs. Allred v. Lowry, 597 S.W.2d 353, 354 n.2 (Tex. 1980). 
Alternatively, the trial court's order setting security is subject to review on a motion to the
appellate court for insufficiency or excessiveness. Tex. R. App. P. 49(b); see also Tapiador v.
North Am. Lloyds of Tex., 772 S.W.2d 954, 956 (Tex. App.--Houston [1st Dist.] 1989, no writ);
Shenandoah Assocs. v. J&K Properties, Inc., 696 S.W.2d 685, 986 (Tex. App.--Dallas 1985, no
writ). Appellants did not pursue either remedy and, instead, perfected this appeal by filing a
bond. Therefore, appellants' eighth point of error is overruled.


CONCLUSION



 The judgment of the trial court is affirmed.





 


 Jimmy Carroll, Chief Justice


[Before Chief Justice Carroll, Justices Jones and Kidd]


Affirmed


Filed: July 7, 1993


[Do Not Publish]
1. All subsequent references to section numbers shall be to the Family Code unless otherwise
noted.
2. The relevant standards for modification of a joint managing conservatorship to a sole
managing conservatorship are set out in section 14.081(d), as follows:


 (d) After a hearing, on the motion of one or both of the joint
managing conservators or on the court's own motion, a court may
replace a joint managing conservatorship with a sole managing
conservatorship if:


 (1)(A) the welfare of the child is a matter of immediate and
serious concern;


 (B) there has been a substantial and unexcused violation of
the terms and conditions established in the existing conservatorship
decree; or


 (C) the circumstances of the child or one or both of the joint
managing conservators have so materially and substantially changed
since the rendition of the decree that it has become unworkable or
inappropriate under existing circumstances; and


 (2) the appointment of a sole managing conservator would
be a positive improvement for and in the best interest of the child. 
3. The relevant standards for a change of the designated sole managing conservator are set out
in section 14.08, as follows:


 (c) After a hearing, the court may modify an order or portion of a
decree that:


 (1) designates a sole managing conservator if:


 (A) the circumstances of the child, sole managing
conservator, possessory conservator, or other party affected
by the order or decree have materially and substantially
changed since the date of the rendition of the order or
decree to be modified; and

 (B) the retention of the present sole managing
conservator would be injurious to the welfare of the child;
and

 (C) the appointment of the new sole managing
conservator would be a positive improvement for the child.